**SMITH CORRELL, LLP**
MARK SMITH—California SBN 213829
msmith@correllsmith.com
JACOB FONNESBECK—California SBN 304954
jfonnesbeck@smithcorrell.com
11766 Wilshire Blvd., Suite 1670
Los Angeles, CA 90025
Tel: (213) 443-6222
Fax: (877) 730-5910

Attorneys for Plaintiff
REFLEX MEDIA, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DIVISION

| | |
|---|---|
| REFLEX MEDIA, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GLADIUM LIMITED, a Cyprus company d/b/a Arrangement.com, Arrangements.com and Arrangement.net; and Does 1-10, inclusive,<br><br>Defendants. | Case No. 2:16-cv-7395<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; DILUTION OF FAMOUS MARKS; AND CYBERSQUATTING.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Reflex Media, Inc. ("Reflex Media" or "Plaintiff"), hereby brings this Complaint against Defendant Gladium Limited ("Gladium"), and Does 1–10, inclusive, (collectively, "Defendants"), and alleges as follows:

# INTRODUCTION

1. Defendants are engaged in an illegal scheme designed to defraud consumers through false advertisements and deceptive media practices using Plaintiff Reflex Media's protected trademarks and copying the core components and look and feel of its website. As further explained below, Defendants' conduct is causing harm to both the recipients of Defendants' false advertisements and to Reflex Media, whose name, brand and goodwill is suffering irreparable harm by being wrongfully associated with Defendants' illegal operations.

2. Defendants are also engaged in illegal cybersquatting. That is, in an attempt to capitalize on the name, brand and goodwill of Reflex Media, Defendants have purchased Internet domain names that are identical and confusingly similar to Reflex Media's protected trademarks. Defendants' illegal use of these domain names is also causing customer confusion and irreparable harm to Reflex Media.

3. Reflex Media operates[1] <SeekingArrangement.com> (sometimes referred to herein as "Seeking Arrangement"), an online dating website that is globally recognized in the online "sugar daddy" dating industry.[2]

4. Seeking Arrangement's brand is the result of substantial investment, innovative sales and marketing techniques, and ethical business practices that distinguish it from its competitors.

5. Reflex Media has been diligent in cultivating a reputable brand in the look and feel of Seeking Arrangement and its associated trademarks; a brand that is associated in the minds of the consumers with a high-quality service provider in this niche market.

6. Defendants own and/or operate three websites offering competing sugar

---

[1] Reflex Media operates Seeking Arrangement under a sub-licensing and operating agreement. Under this arrangement, Reflex Media has been assigned the right to sue on behalf of the owners of the intellectual property.

[2] "Sugar daddy" dating refers to a unique business model that differentiates its users as either a "sugar daddy" or "sugar momma" who are persons willing to pamper others (a "Benefactor"), on the one hand, and a "sugar baby," who seeks the companionship of a Benefactor (a "Member"), on the other hand.

<mark>Case 2:16-cv-07395-RGK-AFM   Document 1   Filed 10/03/16   Page 3 of 20   Page ID #:3</mark>

daddy dating services: Arrangement.com, Arrangements.com and Arrangement.net (collectively referred to herein as "Defendants' Infringing Websites").

7. Defendants are deliberately using Reflex Media's[3] federally registered trademarks in the distribution of advertisements intended to sell dating services to U.S. residents, including customers of Seeking Arrangement. These advertisements are referred to herein as "Defendants' Illegal Ads." Examples of Defendants' Illegal Ads are attached hereto as Exhibits 1 and 2 and are incorporated by reference in their entirety.

8. Reflex Media never authorized Defendants' to use its trademark or copy its website, and would never have done so to assist Defendants' Infringing Websites to compete against Reflex Media and its websites.

9. To bring an end to this deceptive and illegal campaign, to protect its own business and clients, as well as the other recipients of Defendants' Illegal Ads, Reflex Media has been forced to bring this action.

## PARTIES

10. Plaintiff Reflex Media is, and at all material times hereto was, a corporation duly organized and existing under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada. Among other things, Reflex Media operates several online dating websites.[4]

11. Upon information and belief, Defendant Gladium Limited is a Cyprus corporation and the owner/operator of the domain addresses and websites found at <www.Arrangement.com>, <www.Arrangements.com>, and <www.Arrangement.net>.

12. Reflex Media does not presently know the true names and capacities of the defendants named herein as Does 1 through 10, inclusive. Reflex Media will seek leave

---

[3] Reflex Media is not the owner of the trademarks at issue here; rather, it is the entity within its corporate structure responsible for defending the marks at issue in this case. To simplify matters, Reflex Media is sometimes referred to in this Complaint as the owner of these trademarks.

[4] Reflex Media operates the following websites: <SeekingArrangement.com>, <SeekingMillionaire.com>, <MissTravel.com>, <WhatsYourPrice.com>, <OpenMinded.com>, <PairMeUp.com>, and <PerfectArrangement.com>.

to amend this complaint to allege these defendants' true names and capacities as soon as they are ascertained. Reflex Media is informed and believes, and on that basis alleges, that each of the fictitiously named defendants, Does 1 through 10, participated in, and in some manner are responsible for, the acts alleged in this complaint and the damages resulting therefrom.

13. Reflex Media is informed and believes that at all times referenced herein, each defendant was or is the agent, employee, partner, co-venturer, joint venture, successor-in-interest, alter ego, and/or co-conspirator of each and all of the other defendants, and was acting within the course and scope of said agency, employment, partnership, co-venture, joint venture, relationship and/or conspiracy. Reflex Media is informed and believes, and on that basis alleges, that each defendant acted in concert with, and with the consent of, each of the other defendants, and that each defendant ratified or agreed to accept the benefits of the conduct of each of the other defendants. Reflex Media is further informed and believes, and on that basis alleges, that each defendant actively and knowingly participated in the furtherance of the wrongful acts alleged herein, directed the wrongful acts alleged herein, benefitted from the wrongful acts alleged herein, and/or used the entity-defendants in a willful and intentional manner to carry out the wrongful acts alleged herein.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, where Reflex Media's claims arise under the Lanham Trademark Act, 15 U.S.C. § 1051, *et seq.*, and further present a claim of unfair competition joined with a substantial and related claim under the trademark laws.

15. This Court has supplemental jurisdiction over Reflex Media's state law claims pursuant to 28 U.S.C. § 1367, where said claims are integrally interrelated with the federal questions and arise from a common nucleus of operative facts such that supplemental review furthers the interest of judicial economy.

16. Personal jurisdiction exists over Defendant Gladium because it is the owner

and operator of <www.Arrangement.com>, <www.Arrangements.com>, and <www.Arrangement.net>, which are websites through which Defendant Gladium engages in interactive and commercial conduct, that—upon information and belief—involves soliciting and/or otherwise actively seeking to transact business with residents of the United States, including residents of this judicial district. Indeed, Defendants' Illegal Ads, an exemplar of which is attached hereto as Exhibit 1 reads, "Join the newest site in Los Angeles for those seeking arrangement dating." A second example of Defendants' Illegal Ads is attached hereto as Exhibit 2 and reads: "Join the top L.A. Sugar Dating site to seek an arrangement today!"

17. As such, personal jurisdiction exists over Defendant Gladium because it promotes its business in, and, upon information and belief, derives material benefits from, the state of California and this judicial district, or otherwise purposefully avails itself of the privileges and protections of the laws of the state of California, such that traditional notions of fair play and due process are not offended by this Court's exercise of jurisdiction over it.

18. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2) because Defendant Gladium is a foreign entity that is deemed to reside in this judicial district because, for the reasons set forth above, it is subject to personal jurisdiction in this Court.

## GENERAL ALLEGATIONS

**REFLEX MEDIA HAS OBTAINED FEDERAL REGISTRATION AND INCONTESTABLE LEGAL PROTECTION FOR TRADEMARKS ASSOCIATED WITH SEEKINGARRANGEMENT.COM**

19. Since 2006, Reflex Media and its predecessor in interest, InfoStream Group, Inc. ("InfoStream"), have used the mark, SEEKING ARRANGEMENT, in commerce and in connection with the online sugar daddy dating services available at <SeekingArrangement.com>.

20. On May 25, 2007, Reflex Media's predecessor, InfoStream, applied for federal registration of the SEEKING ARRANGEMENT trademark. United States

Trademark Registration No. 3,377,772 was issued on February 5, 2008. A copy of Registration No. 3,377,772 is attached hereto as Exhibit 3.

21. On February 5, 2013, the SEEKING ARRANGEMENT trademark became incontestable.

22. On October 3, 2013, InfoStream applied for a second trademark on the mark, SEEKING ARRANGEMENT. This second application was also granted and assigned United States Trademark Registration No. 4,537,157 on or about March 11, 2014.[5] A copy of Registration No. 4,537,157 is also attached hereto as Exhibit 3.

23. For purposes of this Complaint, the first SEEKING ARRANGEMENT trademark shall be referred to as the "SEEKING ARRANGEMENT" mark. The second mark, assigned Registration No. 4,537,157, is referred to herein as the "SEEKING ARRANGEMENT (#2)" mark. Both marks are collectively referred to herein as the "SEEKING ARRANGEMENT MARKS."

24. Reflex Media also owns the unregistered trademark, ARRANGEMENT, which it has used in connection with the operation of its business domestically and abroad since at least December 2015.

25. The SEEKING ARRANGEMENT MARKS and the ARRANGEMENT mark are collectively referred to herein as the "PROTECTED MARKS."

26. Reflex Media and its predecessor have invested millions of dollars to promote and establish the look and feel of <SeekingArrangement.com> and its associated trademarks and to promote the trademarks in the market. As a result, the website and its use of the PROTECTED MARKS has become synonymous with Reflex Media's business and the high quality product that <www.SeekingArrangement.com> provides.

27. Seeking Arrangement has, for many years, attracted the attention of numerous media outlets including: *Time, Forbes, The Atlantic, ABC News, CNN,*

---

[5] The second SEEKING ARRANGEMENT trademark was broader than the first mark, which disclaimed protection over exclusive use of "ARRANGEMENT" apart from the mark as shown on the application.

Case 2:16-cv-07395-RGK-AFM   Document 1   Filed 10/03/16   Page 7 of 20   Page ID #:7

*MSNBC, the San Francisco Chronicle,* and *Fox News Channel*.

**DEFENDANTS' TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

28. Reflex Media has expended substantial time and resources building a high quality product in an industry that has attracted countless unethical, fraudulent service providers, but its efforts have paid off in Reflex Media's acquisition of valuable goodwill in connection with its services, as well as the PROTECTED MARKS and overall brand.

29. Defendant Gladium, who owns and/or operates the subject competing websites, based on information and belief, launched in 2015 and 2016—years after Reflex Media's well-developed Seeking Arrangement brand.

30. For example, as late as March, 2015, long after the SEEKING ARRANGEMENT mark had become incontestable, the URL "www.arrangement.com" was a website for a floral shop in Cherry Hill, New Jersey. Only later, in approximately mid-2016, did Defendants' competing business begin operating a public website using the arrangement.com URL and Reflex Media's PROTECTED MARKS.

31. On or about July 11, 2016, Reflex Media became aware that Defendants were disseminating their Illegal Ads. Attached hereto as Exhibit 1 is a copy of one of Defendants' Illegal Ads. This advertisement appears at the top of the search results found using Google's search engine for the phrase, "sugar daddy." The advertisement, which is the second listed result on the page reads, in part: "Join the newest site in Los Angeles for those ***seeking arrangement*** dating." (Emphasis added.)

32. A Google search for the phrase, "seeking arrangement" also returned search results where one of Defendants' Illegal Ads was listed as the top result. That ad reads: "Join the top L.A. Sugar Dating site to ***seek*** an ***arrangement*** today!" (Emphasis added.)

33. Defendants did not have permission to use Reflex Media's SEEKING ARRANGEMENT MARKS for this purpose, or any other purpose.

34. Defendants' infringed on the SEEKING ARRANGEMENT MARKS by using the MARKS in connection with the Illegal Ads, without authorization and in a deceptive and confusing manner.

7
COMPLAINT

35. Defendants' unlawful use of the SEEKING ARRANGEMENT MARKS is likely to deceive or confuse consumers into believing that an affiliation, association, sponsorship or connection exists between Reflex Media's <SeekingArrangement.com> website and Defendants' Infringing Websites.

36. Upon information and belief, Defendants acted with willful intent when they disseminated the Illegal Ads—including the advertisements described above—and in a manner likely to cause confusion and deception.

37. Furthermore, Defendants' Infringing Websites do not have Seeking Arrangement's notoriety, positive reviews, market leader status, substantial membership, or lengthy history.

38. Thus, any association with Defendants and/or their websites has, and will continue to, result in a dilution of reputation, goodwill, and notoriety of Reflex Media's websites, the SEEKING ARRANGEMENT MARKS and related brands.

39. In addition to using a name that is confusingly similar to Seeking Arrangement (*e.g.*, <www.Arrangement.com>), and to further perpetuate the false and deceptive affiliation between Reflex Media's website and Defendants' Infringing Websites, Defendants have patterned their Infringing Websites after Reflex Media's website, to give their own websites the same look at feel as Seeking Arrangement.

40. For example, the landing page[6] for both <www.SeekingArrangement.com> and Defendants' Infringing Websites feature the names of the respective websites at the top of the screen, with a "Sign In" or "Login" hyperlink placed in the upper right hand corner. The landing pages for both sets of websites also prominently feature an attractive female wearing a strapless red dress, embracing a dark-haired man. Overlaying this image, on both websites, are three rows of text, which are virtually identical. Although the wording of each varies slightly, the size of the text on the first row is larger than the text in the second row and both websites feature a "red button" that reads, "Join For

---

[6] The landing page is the page returned when someone clicks on a link to access the connecting website. In most circumstances, the landing page is the website's homepage.

Free" on the third row. In addition, Defendants' Infringing Websites use Seeking Arrangement's same color scheme: red, black and white. A side-by-side comparison of the landing pages for Seeking Arrangement and Defendants' Infringing Websites[7] is attached hereto as Exhibit 4.

41.  Additional examples of Defendants' attempt to steal the look and feel of Seeking Arrangement are found elsewhere on the websites. For example, Defendants have copied Seeking Arrangement's PROFILE page, using virtually identical input fields. A side by side comparison of the PROFILE page input fields is attached as Exhibit 5. Defendants' Infringing Websites have also copied Seeking Arrangement's LIFESTYLE field by using the same color scheme, font, terminology and choices. A side by side comparison of the LIFESTYLE field is attached as Exhibit 5. The same is true of Defendants' INCOME and NET WORTH fields, which have copied the same options and ranges offered at <www.SeekingArrangement.com>. A side by side comparison of the INCOME and NET WORTH fields is attached as Exhibit 5, as well as several other similarities between the parties' respective websites.

42.  The features described in the previous two paragraphs, which are found on Seeking Arrangement's webpage, are sometimes referred to herein as its "Trade Dress."

43.  The foregoing facts demonstrate that Defendants are intentionally attempting to confuse Seeking Arrangement's prospective customers and the public generally.

### Defendants' Illegal Cybersquatting

44.  As indicated above, Reflex Media is the owner of the registered trademark, SEEKING ARRANGEMENT (#2), and the unregistered trademark, ARRANGEMENT.

45.  Subsequent to Reflex Media's and InfoStream's (Reflex Media's predecessor in interest) use and acquisition of the SEEKING ARRANGEMENT (#2) and ARRANGEMENT trademarks, Defendants purchased the following domain names, which are referred to herein as Defendants' Infringing Websites: <www.Arrangement.com>, <www.Arrangements.com>, and <www.Arrangemet.net>.

---

[7] Based on information and belief, both of Defendants Infringing Websites are identical.

46. As indicated above, Defendants are attempting to operate a dating business that is competitive with Reflex Media at each of these domains.

## FIRST CAUSE OF ACTION

**(Federal Trademark Infringement, 15 U.S.C. § 1114(1))**

47. Reflex Media incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint, as if fully set forth herein.

48. As alleged herein, Reflex Media has an exclusive license to use protectable trademarks and has been assigned the right to protect those trademarks by, among other things, suing parties infringing on the trademarks.

49. Without Reflex Media's consent, Defendants have used in commerce, in connection with the sale, offering for sale, distribution or advertising of Defendants' goods and services, marks identical to or confusingly similar to Reflex Media's SEEKING ARRANGEMENT MARKS in a manner that is likely to cause confusion, mistake and/or deception among consumers who may perceive that Defendants' goods and services are the same as those of Reflex Media, and/or that Defendants' goods and services are somehow associated, affiliated, connected, approved, authorized or sponsored by Reflex Media.

50. Defendants acted with the intent to cause confusion, mistake, or deception with consumers.

51. Defendants' continued use of marks identical or confusingly similar to Reflex Media's mark has caused, and will continue to cause, irreparable harm and injury to Reflex Media and to Reflex Media's reputation and goodwill for which Reflex Media has no adequate remedy at law. The threat of future injury to consumers and to Reflex Media's business, identity, goodwill and reputation necessitates the award of injunctive relief to prevent Defendants' continued infringement of Reflex Media's valuable marks.

52. Defendants have unjustly profited from their infringement of Reflex Media's marks.

53. As a direct and proximate result of Defendants' infringing activities as

alleged herein, Reflex Media has suffered substantial damage in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

54. Defendants' foregoing acts constitute an exceptional case and are intentional, entitling Reflex Media to treble their actual damages and to an award of attorneys' fees.

## SECOND CAUSE OF ACTION

**(Federal False Designations, False Descriptions, and False Advertising, 15 U.S.C. § 1125(a))**

55. Reflex Media incorporates by reference each and every allegation set forth in the preceding paragraphs of this complaint, as if fully set forth herein.

56. Defendants' misuse of Reflex Media's PROTECTED MARKS in commerce in connection with the goods and services offered on Defendants' Infringing Websites—including commercial advertising and promotion of Defendants' Infringing Websites—constitutes a false designation of origin and/or a false or misleading representation that is likely to cause confusion, mistake and/or deception with consumers that Defendants' goods and/or services are associated, affiliated, connected, approved, authorized or sponsored by Reflex Media.

57. Specifically, without Reflex Media's consent, Defendants have disseminated advertisements—namely, Defendants' Illegal Ads—that contain the SEEKING ARRANGEMENT MARKS.

58. These advertisements, which contain content promoting Defendants' competing sugar daddy dating services offered through <Arrangement.com>, <Arrangements.com>, and <Arrangement.net>, give the false and misleading impression that Seeking Arrangement is affiliated with or responsible for promotional material contained in the Illegal Ads.

59. Furthermore, Defendants' Illegal Ads further give the wrongful impression of an association, affiliation, connection, approval, authorization or sponsorship by, between, and among Seeking Arrangement and Defendants' Infringing Websites.

60. Defendants' conduct constitutes a false designation of origin and/or false or misleading representation that (1) is likely to cause confusion, mistake, or deception with the public and/or consumers as to the affiliation, connection, or association between Defendants and Seeking Arrangement; (2) is likely to cause confusion, mistake, or deception with the public and/or consumers as to origin of the Illegal Ads and/or the origin of the services being provided on Defendants' Infringing Websites, and/or (3) is intended to misrepresent the nature, characteristics, and/or qualities of the goods and services offered by Defendants by usurping Seeking Arrangement's respected brand name.

61. Defendants have unjustly profited from their foregoing conduct.

62. As a direct and proximate result of Defendants' foregoing conduct, Reflex Media has suffered damages in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

63. Defendants' foregoing acts constitute an exceptional case and are intentional, entitling Reflex Media to treble their actual damages and to an award of attorneys' fees.

### THIRD CAUSE OF ACTION
### (Dilution of Famous Marks, 15 U.S.C. § 1125(c))

64. Reflex Media incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint, as if fully set forth herein.

65. Reflex Media, through its predecessor, InfoStream, was the first to actually use the registered trademarks described herein in commerce.

66. The SEEKING ARRANGEMENT MARKS are distinctive and famous within the meaning of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c), for the following reasons:

    a. The marks are distinctive and represent a provocative phrase that is not merely descriptive;

    b. The mark is used extensively in connection with advertising for Reflex

    Media's goods and services;

  c. The mark is recognized widely among the general consuming public because of the unsolicited attention given by news media to Reflex Media's business associated with the marks;

  d. Prior to Defendants' infringing conduct, no other party used a mark similar to Reflex Media's SEEKING ARRANGEMENT MARKS; and

  e. The SEEKING ARRANGEMENT mark is protected by incontestable federal trademark registration.

67. Defendants have used marks identical or confusingly similar to Reflex Media's SEEKING ARRANGEMENT MARKS in commerce in connection with the selling and offering for sale services that compete directly with Reflex Media's business.

68. On information and belief, Defendants' use of Reflex Media's trademarks occurred after Reflex Media's SEEKING ARRANGEMENT MARKS became famous and distinctive.

69. Defendants' use of identical or confusingly similar trademarks dilutes the distinctive quality of Reflex Media's SEEKING ARRANGEMENT trademark as it causes and can cause confusion among consumers and potential customers of Seeking Arrangement.

70. Defendants' use of identical or confusingly similar trademarks also tarnishes Reflex Media's marks by harming the reputation of its famous marks.

71. Defendants willfully intended to trade on the recognition of Reflex Media's famous marks and willfully intended to harm the reputation of that mark and Reflex Media's brand generally.

72. Defendants' use of marks identical or confusingly similar to Reflex Media's SEEKING ARRANGEMENT MARKS has caused, and will continue to cause, irreparable harm and injury to Reflex Media and its trademarks', reputation and goodwill, for which there is no adequate remedy at law. The threat of future injury to Reflex Media's trademarks, business, identity, goodwill and reputation necessitates the award of

injunctive relief to prevent Defendants' continued misuse of Reflex Media's marks.

73. Defendants have unjustly profited from their foregoing conduct.

74. As a direct and proximate result of Defendants' conduct, Reflex Media has been damaged in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

75. Defendants' foregoing conduct constitutes an exceptional case and is intentional, entitling Reflex Media to treble its actual damages and to an award of attorneys' fees.

## FOURTH CAUSE OF ACTION

### (Trade Dress Infringement, 15 U.S.C. § 1125(a))

76. Reflex Media incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint, as if fully set forth herein.

77. Reflex Media owns the design of the Seeking Arrangement website.

78. The Trade Dress of Seeking Arrangement is distinctive. Customers have come to associate the design of <SeekingArrangement.com> with Reflex Media.

79. The design of <SeekingArrangement.com>, including the color scheme, layout, text, font size, graphics and format of input fields found in the PROFILE section of the website are nonfunctional.

80. Defendants have used, and continue to use, the Seeking Arrangement Trade Dress without Reflex Media's consent and in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Defendants' competing products and services.

81. In addition, the name of Defendants Infringing Websites (*e.g.* <www.Arrangement.com>) is confusingly similar to Seeking Arrangement.

82. As a direct and proximate result of Defendants' conduct, Reflex Media is entitled, pursuant to 15 U.S.C. § 1117(a), to recovery of: (i) Defendants' profits related to all uses of the Seeking Arrangement Trade Dress; (ii) any damages sustained by Reflex

Media as a result of Defendants' conduct, the precise amount of which shall be established by Reflex Media at trial; and (iii) the costs of this action.

83. In addition, Reflex Media will be irreparably injured by Defendants' continued infringement of Seeking Arrangement's Trade Dress, in a manner that may be impossible to quantify, unless enjoined by this Court. Reflex Media has no adequate remedy at law for this ongoing injury. Reflex Media therefore seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the Seeking Arrangement Trade Dress without Reflex Media's express written consent in advance.

84. Defendants have willfully copied the Seeking Arrangement Trade Dress. Given the exceptional circumstances of flagrant and willful infringement, Reflex Media requests treble damages, judgment for a sum that this Court finds to be just, and reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a).

## FIFTH CAUSE OF ACTION

### (Cybersquatting, 15 U.S.C. § 1125(d))

85. Reflex Media incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint, as if fully set forth herein.

86. Reflex Media owns the registered trademark, SEEKING ARRANGMENT (#2), and the unregistered trademark, ARRANGEMENT.

87. Reflex Media has consistently used both the SEEKING ARRANGEMENT (#2) and ARRANGEMENT marks in connection with the sale and promotion of its business since before the time that Defendants owned and operated Defendants' Infringing Websites.

88. As discussed above, the SEEKING ARRANGEMENT (#2) mark is famous and distinctive.

89. Reflex Media's ARRANGEMENT mark is also distinctive because it is suggestive of the services available at <SeekingArrangement.com>. Alternatively, Reflex Media's ARRANGEMENT mark is distinctive because it is descriptive of the services available at <SeekingArrangement.com> and has acquired secondary meaning by

becoming synonymous in the minds of the consuming public with Reflex Media.

90. The ARRANGEMENT mark has acquired secondary meaning through, among other things, Reflex Media's:

    a. extensive use of the mark in connection with advertising for Reflex Media's goods and services; and

    b. wide recognition among the general consuming public caused by the unsolicited attention given by news media to Reflex Media's businesses associated with the mark.

91. Defendant acquired the domains associated with Defendants' Infringing Websites after Reflex Media's SEEKING ARRANGEMENT (#2) and ARRANGEMENT marks became distinctive.

92. The second-level domain names associated with Defendants' Infringing Websites, namely—arrangement and arrangements—are identical to and confusingly similar to Reflex Media's SEEKING ARRANGEMENT (#2) and ARRANGEMENT trademarks.

93. Defendants' acquired the domain names associated with Defendants' Infringing Website in bad faith and with intent to unjustly profit from the fame, goodwill, and brand associated with the SEEKING ARRANGEMENT (#2) and ARRANGEMENT marks, as well and Reflex Media generally.

94. Defendants' bad faith is evident from, among other things, the following: (1) Defendants' Illegal Ads, which illegally infringe on Reflex Media's SEEKING ARRANGEMENT (#2) and ARRANGEMENT marks, (2) Defendants have attempted to mimic Reflex Media's Trade Dress on Defendants' Infringing Websites, (3) based on information and belief, Defendants did not own or use the domain names associated with Defendants' Infringing Websites prior to the acts complained of herein, (4) Defendants were aware of Reflex Media's ownership and use of the aforementioned trademarks, (5) Defendants intended to divert Reflex Media's customers to their own websites and attempted to do so by, among other things, creating a likelihood of confusion among

consumers between Reflex Media and Seeking Arrangement on the one hand, and Defendants and Defendants' Infringing Websites, on the other hand, by creating confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' Infringing Website, (6) Defendants were aware at the time they registered the domain names associated with Defendants' Infringing Websites that the second-level domain names were identical and confusingly similar to Reflex Media's famous and distinctive aforementioned trademarks.

95. Defendants' illegal cybersquatting has caused, and will continue to cause, irreparable harm and injury to Reflex Media and its trademarks', reputation and goodwill, for which there is no adequate remedy at law. The threat of future injury to Reflex Media's trademarks, business, identity, goodwill and reputation necessitates the award of injunctive relief to prevent Defendants' continued misuse of Reflex Media's marks.

96. Defendants have unjustly profited from their foregoing conduct.

97. As a direct and proximate result of Defendants' conduct, Reflex Media has been damaged in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

98. Defendants' foregoing conduct constitutes an exceptional case and is intentional, entitling Reflex Media to treble its actual damages and to an award of attorneys' fees.

## SIXTH CAUSE OF ACTION

**(Unfair Competition, Cal. Bus. & Prof. Code. § 17200 *et seq*.)**

99. Reflex Media incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint, as if fully set forth herein.

100. Any conduct that is unlawful, unfair or deceptive constitutes a violation of the California Unfair Competition Law, Business and Professions Code § 17200 *et seq*.

101. Defendants have falsely represented an affiliation, connection, and/or association between Defendants' Infringing Websites and <SeekingArrangement.com> through the unauthorized use of Reflex Media's SEEKING ARRANGEMENT MARKS.

(*See* Exhibits 1 and 2.)

102. Reflex Media requests that that this Court enjoin Defendants from further engaging in consumer fraud by stating or implying that there is any affiliation, connection, or association between/among Defendants' Infringing Websites, on the one hand, and <SeekingArrangement.com>, on the other hand.

103. As explained above, Defendants are also engaged in illegal cybersquatting. Reflex Media respectfully request that this Court enjoin Defendants from further engaging in such illegal cybersquatting and order that Defendants submit the domains associated with Defendants' Infringing Websites to Reflex Media.

## PRAYER FOR RELIEF

**WHEREFORE**, Reflex Media prays for judgment against Defendants as follows:

1. Adjudge that Reflex Media's SEEKING ARRANGEMENT MARKS have been infringed by Defendants in violation of Reflex Media's rights under 15 U.S.C. § 1114;

2. Adjudge that Defendants have competed unfairly with Reflex Media in violation of Reflex Media's rights under 15 U.S.C. § 1125;

3. Adjudge that Defendants' activities are likely to, or have, diluted Reflex Media's famous trademark in violation of Reflex Media's rights under 15 U.S.C. § 1125(c);

4. Adjudge that Defendants have engaged in illegal cybersquatting under 15 U.S.C. § 1125(d);

5. Adjudge that Defendants have engaged, and continue to engage, in unfair competition with Reflex Media;

6. Adjudge that Defendants and each of their agents, employees, attorneys, successors, assigns, affiliates, and joint ventures and any person(s) in active concert or participation with them, and/or person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a. Selling, offering for sale distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble or are confusingly similar to the PROTECTED MARKS, or the look and feel of <SeekingArrangement.com>, as to be likely to cause confusion, mistake or deception, on or in connection with any goods or services that are not authorized by or for Reflex Media;

b. Using the PROTECTED MARKS, any other marks or domain names confusingly similar to those marks alone or in combination with any other letters, words, letter strings, phases or designs, or the look and feel of <SeekingArrangement.com> in commerce or in connection with any goods or services;

c. Using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants' or their goods with Reflex Media or as to the origin of Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact;

d. Further infringing on the rights of Reflex Media in and to any of its trademarks, trade dress, products and services or otherwise damaging Reflex Media's goodwill or business reputation;

e. Using any of Reflex Media's confidential information in connection with any product or service, in any medium, including future contact or business with Seeking Arrangement's members;

f. Otherwise competing unfairly with Reflex Media in any manner; and

g. Continuing to perform in any manner whatsoever any of the other acts complained of in the complaint;

7. Adjudge that Defendants, within thirty (30) days after service of the judgment demanded herein, be required to file with this Court and serve upon Reflex Media's counsel a written report under oath setting forth in detail the manner in which it

has complied with the judgment;

8. Adjudge that Defendants assign all title, right and interest in the domain names associated with Defendants' Infringing Websites to Reflex Media within fourteen (14) days;

9. Adjudge that Reflex Media recover from Defendants their actual damages and lost profits in an amount to be determined at trial, but estimated to exceed $75,000, for Defendants' violations of 15 U.S.C. §§ 1114 and 1125; that Defendants be required to account for any profits that are attributable to its illegal acts; and that Reflex Media be awarded the greater of (1) three times Defendants' profits or (2) three times any damages sustained by Reflex Media under 15 U.S.C. § 1117, plus prejudgment interest;

10. Adjudge that Reflex Media recover from Defendants the damages caused by Defendants, as well as punitive and/or treble damages and attorneys' fees;

11. Adjudge that Reflex Media be awarded its costs incurred in connection with this action, including its reasonable attorneys' fees and investigative expenses;

12. Impose a constructive trust on all of Defendants' funds and assets that arise out of Defendants' infringing activities; and

13. Adjudge that all such other relief be awarded to Reflex Media as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Reflex Media hereby requests a jury trial in this matter.

Dated: October 3, 2016            **SMITH CORRELL, LLP**

By: /s/ Mark L. Smith
Mark L. Smith
Attorneys for Plaintiff
REFLEX MEDIA, INC.

20
COMPLAINT